UNITED STATES DISTRICT COURT
DISTRICT OF MAINE
AT PORTLAND

SIDNEY P. KILMARTIN,           )
                               )
        Plaintiff,             )
                               )
v.                             )   Case No.
                               )
DEBBIE KILMARTIN,              )
                               )
        Defendant.             )
                               )

## COMPLAINT AND JURY DEMAND

Comes now the Plaintiff, Sidney P. Kilmartin, pro se, ("Sidney")[1], and in support of the instant action, states the following:

### I. Nature of the Action

1. This is an action for Breach of Contract, Fraud, Unjust Enrichment, Innocent Misrepresentation and a Punitive Damages Count related to real property during a divorce in Maine and where the Defendant committed these acts during her stay at the property.

### II. Jurisdiction and Venue

2. Jurisdiction exists pursuant to 28 U.S.C. § 1332.

3. The amount in controversy greatly exceeds $75,000.

4. The property and the Defendant, both located in this District and near Portland, venue is proper in this Court.

---

[1] For ease and as both parties are named "Kilmartin," first names will be used in this Complaint (as well as "Plaintiff" and "Defendant."

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE
AT PORTLAND

SIDNEY P. KILMARTIN,        )
                            )
    Plaintiff,              )
                            )
v.                          ) Case No.
                            )
DEBBIE KILMARTIN,           )
                            )
    Defendant.              )
                            )

### COMPLAINT AND JURY DEMAND

Comes now the Plaintiff, Sidney P. Kilmartin, pro se, ("Sidney")[1], and in support of the instant action, states the following:

### I.  Nature of the Action

1. This is an action for Breach of Contract, Fraud, Unjust Enrichment, Innocent Misrepresentation and a Punitive Damages Count related to real property during a divorce in Maine and where the Defendant committed these acts during her stay at the property.

### II.  Jurisdiction and Venue

2. Jurisdiction exists pursuant to 28 U.S.C. § 1332.

3. The amount in controversy greatly exceeds $75,000.

4. The property and the Defendant, both located in this District and near Portland, venue is proper in this Court.

---

[1] For ease and as both parties are named "Kilmartin," first names will be used in this Complaint (as well as "Plaintiff" and "Defendant."

5. Although some of the claims (or the basis for claims) were brought before a Maine state court during the divorce proceedings, that court would not rule on the merits of these matters, and in fact would not even address them generally, despite repeated requests.

6. Sidney is currently a resident of Kentucky and Debbie a resident of Maine.

7. No other court, federal or state, has addressed the claims contained in this Complaint.

### III. The Parties

8. As stated above, Sidney is a resident of Lexington, KY.

9. Debbie is a resident of Maine and residing in the Portland area.

10. Both parties were married for many years prior to separating in 2008 via an August Separation Agreement. A divorce was granted by the State of Maine in 2020 and finalized after property-related appeals and other issues ran their course after that.

11. During the pending divorce and after it, Debbie was to take care of a piece of property that belonged to Sidney and to pay him rent.

### IV. Factual Allegations

12. Sidney and Debbie were previously married. A divorce was finalized between them in 2021 after state litigation ended.

13. During the marriage, Sidney (amongst his other jobs) "flipped" properties for added earnings for he and his family.

2

14. Flipping properties entails buying a property, fixing it up, marketing it and then selling it.

15. During the marriage, and then to a lesser extent during the separation, the parties would jointly engage in flipping a property.

16. One property that was not a "joint flip" by the parties, was located at 38 Elderberry Lane, Windham, Maine. This property was purchased solely by Sidney in 2014 for him to live in upon his release from a mental care facility in Augusta, Maine.

17. Debbie had no part in the purchase of this property and admitted so in deposition testimony and in emails that Sidney possesses.

18. Debbie agreed to take care of this property in Sidney's absence in exchange for a reduced rent but while using Sidney's own funds for said care. There was no written agreement to this effect.

19. From roughly July, 2019, until the fall of 2022, Debbie lived at 38 Elderberry Lane and used Sidney's own funds for what little upkeep she had done on the property.

20. Originally, Debbie had wanted a long-term rental agreement made with Sidney but he declined. He then agreed to allow her to stay provided she use his funds to make mortgage payments and that she pay a market-value rent to him. She never paid any amount for living at the residence.

21. Additionally, she refused to make mortgage payments on the property although she had funds of Sidney's in which to

do so. This caused credit-score issues with Sidney and foreclosure proceedings with Wells Fargo Mortgage Co.

22. These foreclosure issues caused Sidney to have to obtain the assistance of others in order to ward off foreclosure which cost him approximately $3,300.

23. Sidney possesses emails wherein Debbie admits to refusing to make mortgage payments despite having Sidney's funds to do so. All the while living in the house without making any rent payments to Sidney.

24. During a March 18, 2021 status conference in the state court hearing the divorce, Sidney brought up various issues, including some related to this Complaint. He was ignored.[2]

25. Sidney brought up issues related to this Complaint to the Maine Law Court and he was again ignored, despite the trial court never having addressed issues raised by Sidney.[3]

---

[2] The trial court's docket sheet may very well be included as exhibits should this case go forward. It will show that despite approximately ten (10) well drafted motions being filed by Sidney, not a single one was ever addressed. (Except a motion by Sidney's counsel to withdraw--which was granted). Otherwise, the trial court would not address things such as Debbie violating state law related to a preliminary injunction, other violations in withholding discovery, Sidney's motion to dispose of his own property, and Sidney's motion for rulings related to the final hearing, including Sidney's motion for a few witnesses to attend.

[3] Sidney, in his brief to the Law Court, addressed in great detail the refusal of the trial court to adjudicate the great many issues that Sidney was raising, including acts of fraud and deceit on the part of Debbie and her lawyer, of which Sidney had proof. But the Law Court, for whatever reason, would not address this, even in purfunctory ways. Thus, issues herein have never been litigated on their merits.

4

26. Issues presented herein were also never addressed by the trial court, and then the Law Court, despite being asked to do so by Sidney. This includes at the final hearing of the divorce proceedings.

27. Sidney had no before-hand knowledge that the Maine State Courts would ignore his claims related to Debbie, including the rent issue and the acts of Debbie while she stayed at Sidney's property from 2019 to 2022.

28. The parties had a verbal agreement that Debbie would pay rent (at a slightly reduced rate) in exchange for seeing that the property was taken care of through the use of Sidney's funds while he was away and until he could make further determinations on the property.

29. Emails and even court filings (in the state court) support this fact.

30. Debbie has engaged in widespread and constant fraud, deceit and lying in her dealings with Sidney, and others, in the past, as evidenced by the following:

    a. Her drafting of a property, Separation Agreement in 2008 while Sidney was in a mental care unit at the Cumberland County Jail;

    b. Her fraudulent amendment to that Separation Agreement in 2009, using a forged signature of Sidney;

    c. Her fraudulent use of a notary named Kristine Paolino in property matters with Sidney;

    d. Her violations of state law related to disposing of real property during a divorce and not filing Real Estate Certificates in violation of law;

5

  e. Her preparation of a fraudulent $70,000 lien against a property owned by Sidney;

  f. The transferring of property located at 111 Spring Valley Rd. from Sidney to Debbie in a fraudulent transfer with forged deed signatures;

  g. The non-disclosure of property located at 368 Bridgton Rd.;

  h. Her taking of equity from a property that she was not entitled to and that was located at Embden Pond and two other properties;

  i. Her taking of profit from two properties located on Brookhaven Street, Windham and Eastlawn Ave., Portland;

  j. Her taking SSDI payments when she was not entitled to same;

  k. Her fraudulent taking of Home Depot Refund checks that were in Sidney's name;

  l. Lying on a 2008 Child Support Affidavit with regards to her yearly income;

  m. Her fraudulent taking of Sidney's Lariot Pickup truck in exchange for health insurance for Sidney that Debbie had dropped when she was not allowed to do so; and

  n. Her seeking spousal support and attorney fees in the state court action when her own drafted agreement would not allow for same.[4]

  31. Debbie has also been sanctioned by the Maine Real Estate Commission (at least twice) for honesty issues with others.

---

[4] While some, or even most, of these issues are not directly related to the instant matter, they are nonetheless produced here to show a pattern of conduct by Debbie in her dealings with others. Sidney acknowledges himself sitting in prison and notes that his shortcomings are well known. Debbie's have been hidden and the courts of Maine refused to address them or even to admit that they exist.

32. Regarding the property at 38 Elderberry Lane, Windham, and which was occupied by Debbie for years without payments due, the trial court of Maine awarded that property to Sidney in conjunction with a Separation Agreement that Debbie herself had drafted giving the property to Sidney (Sidney had purchased it by himself with his own money).

33. At the time of Debbie moving into the property, Sidney had not yet relocated to that property.

34. Debbie's early involvement with Sidney's purchase of 38 Elderberry Lane consisted of her submitting Sidney's on-line, foreclosure, auction bid.

35. The foreclosure bank demanded that Debbie be on the deed as a bidder with Sidney as the buyer.

36. Debbie promised to remove herself from the deed but she did not do so.

37. The $105,000 down payment was made solely by Sidney as was all the mortgage payments (from his funds) and all the costs associated with remodeling the home.

38. Debbie never paid any money towards the purchase of the property and in fact obtained $6,500 in commission as the broker for the same for simply 15 minutes of work.

39. Sidney began asking for Debbie to remove herself from all aspects of the property beginning in 2018, as Sidney wanted and needed to sell the property.

40. Debbie, although always admitting that the property was Sidney's, and despite her promise to do so, never removed

7

herself from the property's paperwork.

41. This constant refusal prevented Sidney from selling the property, properly renting the property and interfered with his use of the property.

42. Debbie remained in the house, used it for storage of her own contents from a 5-bedroom Colonial home by placing her items in the garage, above the garage, and in the basement, and she moved another person into the home during 2021 and 2022.

43. Debbie totally ignored two state court orders for her to vacate the property.

44. She stayed in place four months beyond the final deadline issued by the state court (2nd final order). Action was begun on a "forced entry detainer" removal of Debbie from the house and was approximately four days from occurring.

45. Sidney had to hire an attorney and incurred many thousands of dollars in expenses to try to get Debbie out of the house.

46. Debbie certainly had the means and the money to live elsewhere but simply chose not to because of the contentiousness of the divorce both parties were engaged in. Emails and other communications bare this out.

47. Debbie finally vacated the property in the fall of 2022. Sidney later sold the property. Debbie had nothing to do with that sale.

### V. Legal Claims

#### Count 1: Breach of Contract

8

48. Sidney incorporates paragraphs one (1) through forty-seven (47) as if fully set forth herein.

49. The parties entered into a binding verbal contract whereby Debbie could live in the home at a slightly reduced rent provided she (1) pay the rent due (2) make the mortgage payments with the funds that Sidney provided and (3) kept the maintenance up on the property with the funds Sidney provided.

50. Debbie lived at the home for numerous years but did not make rent payments, declined to make mortgage payments with Sidney's funds and did not keep the property up with those same funds.

51. Debbie had no cause to breach the agreement.

52. Sidney repeatedly asked Debbie to comply with her part of the agreement. She refused.

53. Maine recognizes verbal contracts.

54. Sidney upheld his end of the bargain. Debbie did not.

55. Sidney was harmed by Debbie's breach of the agreement including her continued breach even after being repeatedly ordered out of the house by the state court.

## Count 2: Fraud

56. Sidney incorporates paragraphs one (1) through fifty-five (55) as if fully set forth herein.

57. Debbie made a false representation to Sidney in that she would pay a rent to him and take care of mortgage payments with funds that he provided her.

58. These were material fact statements related to the arrangement the two had for her to live at the property.

9

59. She made these statements of her intentions knowing them to be false in that she never made any rental payments to Sidney while living there.

60. The purpose of the false statements was to induce Sidney to agree to let her live at the property which she did, for numerous years, rent free. Specifically, 2019 to 2022 at 38 Elderberry Lane, Windham, Maine.

61. Sidney justifiably relied on the false assertions of Debbie--that she would pay a reasonable but slightly reduced rent and make the mortgage payments with Sidney's funds--and he acted on those assertions as true and acted on them by agreeing to let Debbie live at the property.

62. Sidney was harmed by the actions of Debbie.

### Count 3: Unjust Enrichment

63. Sidney incorporates paragraphs one (1) through sixty-two (62) as if fully set forth herein.

64. Sidney conferred a benefit upon Debbie by letting her stay at the property for several years at a reduced rent rate.

65. Defendant appreciated the benefit (legally appreciated).

66. It would be inequitable, under the circumstances, for the Defendant to retain the benefit without paying for its value.

### Count 4: Innocent Misrepresentation

67. Sidney incorporates paragraphs one (1) through sixty-six (66) as if fully set forth herein.

68. Debbie made a misrepresentation of a material fact to Sidney that she would make rent payments and make the mortgage

payments out of the funds left to her by Sidney.

69.  Debbie made this misrepresentation to Sidney for the purpose of inducing him to agree to let her live at the residence located at 38 Elderberry Lane, Windham, Maine.

70.  Sidney agreed to let Debbie live at the property based on his reliance of her misrepresentations of fact (her paying) and he suffered pecuniary loss as a result of his reliance on her statements.

71.  Whether Debbie's statements were made fraudulently or even negligently, Sidney should be able to recover his losses as a result of Debbie's statements that were false.

72.  The Maine Law Court has seemingly recognized this tort by referring with approval to the section of the Restatement (Second) of Torts that defines innocent misrepresentation.

Count 5:  Punitive Damages

73.  Sidney incorporates paragraphs one (1) through seventy-two (72) as if fully set forth herein.

74.  Debbie has committed torts against Sidney as explained above.

75.  During the execution of these torts, Debbie acted with malice against Sidney as evidenced by her attacks on him through emails, to attorneys--including his own--and in communications with his family and others.

76.  Debbie took property that belonged to Sidney time and time again.  She did so through deceit, lying and subterfuge.

77. Alternatively, Debbie acted so outrageously by ignoring state court order after order all the while insulting Sidney and costing him money, that malice can be implied.

78. The ill will from Debbie towards Sidney is shown in all her actions from the beginning of the divorce proceedings up through the final act of her leaving the property years after she was supposed to leave it.

79. Sidney was harmed by Debbie and her constant acts of deceit, lying, and disobeying of court orders and she should be punished by this Court so as to deter similar action by her, and others similarly situated, in the future.

### VI. Relief Requested

80. By way of this Complaint, Sidney Kilmartin respectfully asks for the following relief:

   a. Actual damages to be determined at a later date but certainly in excess of $250,000.00;

   b. Compensatory damages;

   c. Punitive damages as determined by this Court or a jury;

   d. A jury trial for all issues appropriate for same;

   e. All costs and fees associated with this action;

   f. All attorney fees associated with this action;

   g. Pre and post judgment interest; and

   h. All other relief appropriate under law and court order.

## VII. Certification and Closing[5]

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*/s/ Sidney P. Kilmartin*

Respectfully submitted,

Dated: February 20, 2024

*/s/*
Sidney P. Kilmartin
No. 08621-036
Younity Unit
Federal Medical Center
PO Box 14500
Lexington, KY 40512-4500

---

[5] A form provided by the Clerk's Office contained this statement and thus Sidney includes it here. Additionally, Sidney believes that he provided all the information required by the form in this drafted Complaint.